## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## STATESVILLE DIVISION

5:22-cv-105

| | | |
|---|---|---|
| DAVID I. PAIST AND JULIE M. PAIST, | ) ) ) ) | |
| Plaintiffs, | ) ) | **COMPLAINT** |
| v. | ) ) | **(JURY TRIAL DEMANDED)** |
| UNITED SERVICES AUTOMOBILE ASSOCIATION; USAA CASUALTY INSURANCE COMPANY; and USAA GENERAL INDEMNITY COMPANY, | ) ) ) ) ) | |
| Defendants. | ) ) | |

**NOW COME** Plaintiffs, by and through undersigned counsel, to complain of the Defendants by alleging and saying as follows:

## PARTIES

1.      At all times material hereto, Lieutenant David I. Paist has been a citizen and resident of Hickory, North Carolina and joint owner of real property located at 1029 16th Avenue Place NW, Hickory, Catawba County, North Carolina 28601-2344 (the "Property") that was damaged on or around August 11, 2019, as a result of a fire loss. Ownership of the Property is shared with his wife Julie M. Paist.

2.      At all times material hereto, Julie M. Paist has been a citizen and resident of Hickory, North Carolina and the joint owner of the Property.

3.      Lieutenant David I. Paist and Julie M. Paist ("Plaintiffs" or "Lieutenant and Mrs. Paist") are husband and wife.

4.      Upon information and belief, Defendants UNITED SERVICES AUTOMOBILE ASSOCIATION, USAA GENERAL INDEMNITY COMPANY, and USAA CASUALTY INSURANCE COMPANY (collectively and jointly referred to as "Defendants" or "USAA"), are corporations organized and existing under the laws of the State of Texas, with their principal office and place of business in San Antonio, Texas. At all times relevant to this Complaint, Defendants were duly authorized to transact and was transacting business in North Carolina.

## JURISDICTION & VENUE

5.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, as there is complete diversity of citizenship, and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

6.      Defendants are subject to personal jurisdiction in this District.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events, acts, or omissions giving rise to the underlying claim and questions surrounding coverage under the policy of insurance at issue occurred there.

## FACTUAL ALLEGATIONS

8.      For the period of August 3, 2019, to August 3, 2020, the Property was insured under a Homeowners Policy bearing policy number USAA 00162 68 89 93A (hereinafter, the "USAA Policy" or "Policy"). The USAA Policy is attached hereto as Exhibit A.

9.      The USAA Policy was issued by Defendants and provided insurance coverage for Plaintiffs' Property.

10.      Plaintiffs' home was significantly damaged on August 11, 2019 by fire. The fire caused  catastrophic damage to both the structure and personal property of Plaintiffs, and was deemed uninhabitable.

11.     The property damage was a result of the fire loss ("the Loss"). Plaintiffs were displaced and had to reside in a hotel and then an apartment. The dwelling and its contents were damaged by the fire, smoke, and water damage from fire suppression efforts.

12.     Plaintiffs timely paid all premiums for the Policy, and the Policy was in full force and effect at the time of the fire.

13.     Lieutenant Paist promptly notified USAA of the claim for the damage related to the Loss (the "Claim").

14.     In response, USAA assigned claim number 001626889-023.

15.     On or around August 13, 2019, Defendants, through its adjuster Miguel Torres ("adjuster"), conducted a cursory and inadequate site inspection of the Property. Mr. Torres along with a restoration company were at the property within 72 hours of the fire, but they failed to document all of the damages to the Property. Based on that inspection, the adjuster drafted an estimate for Plaintiffs' Claim. The estimate set forth the entire value of the Claim assessed by USAA: RCV of $504,863.38 and ACV of $378,326.15 under Coverage A – Dwelling Protection. This estimate was completed on September 29, 2019, more than five weeks after the fire, but these amounts were not properly paid in this Claim.

16.     At this time, it unknown the extent of which USAA evaluated the personal property loss of Mr. and Mrs. Paist and their family, specifically the belonging/contents that were damaged or destroyed by the Loss.

17.     USAA did dispatch its vendor, Servpro of Alexander, Burke, Caldwell & Catawba Counties ("Servpro") to the Property.  USAA paid two payments directly to Servpro following the fire to board up, tarp, and remove fire debris at the Property. Neither Mr. or Mrs. Paist were listed

as named payees on any payments to Servpro. Checks in the amount of $2513.94 and $1062.89 were issued directly to this company.

18.     USAA continued to investigate the Loss for several months, but failed to properly evaluate the Loss and the indemnity owed under the Policy.

19.     At all times material hereto, Plaintiffs cooperated with Defendants or Defendants waived compliance.  Specifically, Lieutenant and Mrs. Paist provided all requested information, documents, and provided examinations under oath pursuant to the request of Defendants.

20.     On March 31, 2020, 234 days after the fire, USAA took the position that the Claim as it relates to Lieutenant David I. Paist would be denied. The coverage determination letter ("CDL") is attached as Exhibit B.

21.     USAA only paid indemnity payments in the name of Julie M. Paist and denied payments to her husband, Lieutenant David I. Paist.

22.     USAA alleged Mrs. Paist would be paid for a portion of the Claim as an innocent co-insured.

23.     USAA then paid Mrs. Paist based on the inadequate and poorly prepared estimate of damages and claim evaluation by Miguel Torres.

24.     USAA denied the claim made by Lieutenant Paist by citing policy provisions related to intentional loss.

25.     Specific to this Loss, USAA determined that the fire was intentionally set.

26.     Lieutenant  Paist was the person to discover his house was on fire and called 911 in the early morning hours of August 11, 2019.

27.     The fire was discovered by Lieutenant Paist when he was awakened by the fire that was burning his home.  Lieutenant Paist was inside the house and asleep at the time of the Loss.

28.     Under the subject Policy, fire loss is a covered cause of loss.

29.     The Policy provides for coverage caused by fire, smoke, and ensuing loss.

30.     The basis for USAA not paying for the claim is that it alleges Lieutenant Paist intentionally set his house on fire.

31.     USAA has set forth an unsupported denial and cited only the following in the CDL:

The records presented along with your statement under oath, confirm a depletion of financial assets prior to the fire, suggesting financial distress. Furthermore, during your EUO, you explained that the house was "too big and too expensive", and that you considering selling the house prior to the fire.

32.     USAA denied the claim citing to the following:

A. We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event continuing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

8. Intentional Loss
Intentional loss means any loss arising out of an act an insured commits or conspires to commit with the intent to cause a loss.
The exclusion only applies to an insured who commits or conspires to commit an act with the intent to cause a loss.

SPECIAL FORM - HOMEOWNERS POLICY titled SECTION - I EXCLUSIONS
SPECIAL PROVISIONS - NORTH CAROLINA (HO 32 32 0119)

Please refer to the policy provisions located on page 24-25 of your SPECIAL FORM - HOMEOWNERS POLICY titled SECTION I - CONDITIONS. More specifically, that section states:
R. Concealment or Fraud
We provide coverage to no insureds under this policy if, whether before or after a loss, an insured has:
1. Intentionally concealed or misrepresented any material fact or circumstance;
2. Engaged in fraudulent conduct; or
3. Made false statements;
relating to this insurance.

S. Loss Payable Clause
If the Declarations shows a loss payee for certain listed insured personal property, the definition of insured is changed to include that loss payee with respect to that property. If we decide to cancel or not renew this policy, that loss payee will be notified in writing.

33.     USAA improperly denied the claim as one of intentionally set arson by alleging only financial hardship and a desire to possibly downsize the family home.

34.     Plaintiffs did not commit or conspire to commit an act with the intent to cause a loss.

35.     USAA failed to specify how it had any basis to allege that the Plaintiffs either set their own house on fire or sought for their home to be set on fire.

36.     USAA knew at the time it sent the CDL letter that there was no basis to deny the claim, but sent the CDL as a way to attempt to limit claim payments.

37.     USAA issued payment to Julie M. Paist and BBT for partial damages under Coverage A, and its basis was to pay the mortgage company and spouse. No payment was ever issued to Lieutenant Paist.

38.     The Paists attempted to hire contractors to repair the Property, but due to the failure of USAA to properly pay for the Loss, they did not have the amount necessary to effectuate repairs. It has become obvious that the adjusters assigned by USAA improperly denied the claim to Mr. Paist, and also omitted a gross number of damaged items and areas in the estimate of damages or undervalued same. The values and costs reflected in the USAA estimate were also not in accord with current market prices. By only paying a portion of the total loss, USAA knew the Paists could never repair/replace the home.

39.     On May 3, 2022, Plaintiffs, at their own expense, retained Fat Ox Public Adjusters ("Fat Ox") as their public adjuster to further assist in obtaining fair and proper payment for the claim.

40.     On or around May 3, 2022, after being contacted by Fat Ox, Defendants reopened the Claim as to Julie M. Paist only, and while it re-inspected the Property and agreed that additional damages were missed in its initial evaluation, USAA has failed to make any further payments or give further consideration for either Mr. or Mrs. Paist.

41.     As a part of its representation of Plaintiffs, Fat Ox provided a Sworn Statement in Proof of Loss  ("POL") to  Defendants from Mr. and Mrs. Paist showing the damages caused by the Loss for Coverage A under the Policy. In the documentation provided by Fat Ox, the Plaintiffs' adjuster explained and documented the need for a general contractor to demolish and rebuild the fire damaged residence and documented that a repair was not viable. The POL sets forth the loss as $1,039,913.05 Replacement Cost and $1,038,608.03 Actual Cash Value Loss, but  $611,000.00 is the Actual Cash Value Claim to restore the dwelling. The Policy does include an additional endorsement providing additional coverage in the amount of 25% of the Coverage A limit, thus affording the Plaintiffs additional coverage of $152,750.00 in indemnity for a loss in North Carolina. The Policy also has Ordinance and Law Coverage.  The POL and supporting estimates attached hereto as Exhibit C.

42.     In addition to Coverage A – Dwelling Protection damages listed in Exhibit C, the Policy provides further additional indemnity and the Plaintiffs have suffered additional losses caused by the fire. The Plaintiffs suffered losses under the additional coverages including, but not limited to, Coverages B, C and D that have not been paid or not paid in full.

43.     USAA has refused to reasonably investigate the damages set forth at the time of the loss or in response to the POL, or make payment for same. It has failed to make fair and proper payment of the Claim or to do anything further to properly investigate or adjust the Claim. Instead, USAA has continued to stonewall (hoping the statute of limitations would run) and compelled the insureds, the Plaintiffs, to file the instant litigation.

44.     USAA should have responded to the POL on or before July 7, 2022, and timely sent further payment. USAA has failed to do so.

45.     Without proper payment of the Claim, and as a result of Defendants' delay tactics and repeated and unreasonable denials, Plaintiffs have incurred, and will continue to incur, significant expenses, property depreciation, attorneys' fees, litigation costs, and other expenses and damages.

46.     USAA has failed to provide a reasonable basis for its failure to pay the full value of the Claim or for its unreasonable positions taken in the adjustment of Plaintiffs' Claim.

47.     At all times throughout the adjustment of the Claim, Plaintiffs complied as promptly as possible with every request made by Defendants for information regarding the Claim, and have otherwise fulfilled all conditions precedent and contractual obligations under the Policy, or Defendants have waived compliance prior to the filing of this lawsuit.

48.     Plaintiffs have done everything in their power to mitigate damages and to prevent further damages in light of the Property's compromised state.

**FIRST CLAIM FOR RELIEF**
**Breach of Contract**

49.     Plaintiffs reallege and incorporate the preceding allegations as if fully set forth herein.

50. The Policy constitutes a contract between Plaintiffs and Defendants.

51. USAA breached the Policy and purposefully denied the Plaintiffs their benefits under the Policy in that it:

   a. Purposefully and repeatedly adhered to a baseless position as to the coverage for the Claim, despite evidence to the contrary;

   b. Acted intentionally in delaying the adjustment of Plaintiffs' Claim in taking unreasonable positions as to the Claim, and in purposefully providing little to no explanation for refusing to pay or adjust the Claim, all to deny Plaintiffs their benefits under the Policy;

   c. Repeatedly invited Plaintiffs to submit further evidence as to coverage for the Claim, at their own expense, only to refuse to review such evidence or incorporate it into the adjustment of the Claim;

   d. Repeatedly and baselessly alleged that the reports, estimates and other evidence from Plaintiffs had no substantive impact on coverage and on the value of the Claim without any explanation or reasoning as to why they had no substantive impact;

   e. Purposefully engaged in various delay tactics intended to frustrate Plaintiffs' efforts to resolve the Claim, all in an attempt to pressure Plaintiffs into foregoing seeking payment on the Loss, to deny Plaintiffs their benefits under the Policy, and to force Plaintiffs to initiate this litigation to recover the amounts owed under the Policy;

   f. Generally, refused to pay the Claim when it was due under the Policy; and

g.   Otherwise breached the terms of the Policy, as Plaintiffs will demonstrate at trial.

52.     As a direct and proximate result of Defendants' breach of the Policy, Plaintiffs have been damaged, and Plaintiffs are entitled to consequential, contractual, and other damages as proven through discovery and trial.

**SECOND CLAIM FOR RELIEF**
**Breach of the Covenant of Good Faith and Fair Dealing**

53.     Plaintiffs reallege and incorporate the preceding allegations as if fully set forth herein.

54.     Defendants' conduct alleged herein was in bad faith and in violation of the covenant of good faith and fair dealing implied by law into the Policy.

55.     Defendants' conduct, actions, omissions, and refusals to timely and promptly adjust and pay the Claim constitutes bad faith. A nonexclusive list of Defendants' bad faith includes:

a.   Misrepresenting pertinent facts relating to coverage at issue, particularly regarding coverage for the Claim;

b.   Failing to acknowledge and act reasonably promptly upon communications with respect to the Claim;

c.   Purposefully and repeatedly adhering to a baseless position as to coverage for the Claim, specifically regarding the scope of coverage and damages;

d.   Failing to acknowledge and act reasonably promptly upon evidence from Plaintiffs concerning the extent of damage;

e. Repeatedly inviting and requesting Plaintiffs to spend their time and money gathering estimates, reports, and other evidence for coverage of the Claim, only to completely ignore such evidence and continue to deny the Claim;

f. Refusing to provide reasonably prompt and clear communications as to why Plaintiffs' estimates, reports, and evidence did not support coverage for the Claim;

g. Failing to conduct a reasonable investigation of the Claim;

h. Purposefully engaging in numerous delay tactics in order to pressure Plaintiffs to forego pursuing full payment of the Claim and eventually forcing Plaintiffs to initiate this lawsuit in order to recover the amount that is owed on the Claim;

i. Failing to act in good faith to effectuate prompt, fair, and equitable settlement of the Claim, despite liability under the Policy being reasonably clear;

j. Misusing its power and authority in such a way to be tantamount to outrageous conduct; and

k. As will otherwise be shown through discovery and trial.

56. As a proximate result of Defendants' breach of the covenant of good faith and fair dealing, Plaintiffs have been damaged and are entitled to recover for the same. Additionally, Plaintiffs are entitled to recover punitive damages from Defendants for the above-described conduct, which was willful and wanton, in the maximum amount permitted by law.

**THIRD CLAIM FOR RELIEF**
**Unfair Claims Settlement Practices**
**And Unfair & Deceptive Trade Practices**

57. Plaintiffs reallege and incorporate the preceding allegations as if fully set forth herein.

58. The conduct of Defendants constitutes unfair claims settlement practices that violate one or more of the subparts of N.C.G.S. § 58-63-15(11), and Unfair & Deceptive Trade Practices in violation of Chapter 75 of the North Carolina General Statutes, including, but not limited to:

a. Misrepresenting pertinent facts or insurance policy provisions relating to the coverage at issue;

b. Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies;

c. Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies;

d. Refusing to pay claims without conducting a reasonable investigation based upon all available information;

e. Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear;

f. Compelling [the] insured to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amount actually due to such insured;

g. Attempting to settle a claim for less than the amount to which a reasonable person would have believed he was entitled;

h. Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement;

i.  Purposely failing to act in good faith to effectuate prompt, fair, and equitable settlement of the Claim in which liability had become reasonably clear based on the estimates, reports, and other evidence provided by Plaintiffs at the request and invitation of the Defendants;

j.  Intentionally refusing to review or consider the evidence regarding the extent of damage to the Property and the value of the Claim provided by Plaintiffs or to incorporate such evidence into its adjustment of the Claim, despite repeatedly and expressly informing Plaintiffs that it would do so;

k.  Ignoring the detailed repair estimates provided;

l.  Failing to provide any explanation or communication to Plaintiffs regarding why the evidence provided by Plaintiffs was insufficient to alter Defendants' denial of Plaintiffs' Claim, despite evidence that damages exceeded that which was recorded by its adjuster from fire damage;

m.  Failing to adopt and implement reasonable standards for the prompt investigation and adjustment of claims arising under its policies, including the Claim, and for resolution of those claims under its policies, including the Policy;

n.  Purposely refusing to abide by its own standards for prompt investigation and adjustment of claims arising under its policies and attempting to manipulate those procedures for its own benefit;

o.  Refusing to consider, review, incorporate, or respond to the evidence provided by Plaintiffs in good faith, and otherwise delaying payment of the Claim; and

p.  Other particulars as will be adduced through further investigation, discovery, or at trial.

59.     More particularly, with Defendants' actual and/or constructive knowledge of Plaintiffs' damages and coverage therefore, Defendants unfairly and unlawfully failed to promptly investigate, adjust, and pay the Claim in violation of North Carolina law, N.C.G.S. § 58-63, and Chapter 75 of the North Carolina General Statutes. The factually specific statutory violations, in part, are outlined above and said violations, in part, correspond to violations of provisions of North Carolina law found from N.C.G.S. § 58-63-15(11)(a) through N.C.G.S. § 58-63-15(11)(n).

60.     Defendants' above-described conduct, in violation of N.C.G.S. § 58-63-15(11), is a per se violation of N.C.G.S. § 75-1.1.

61.     The conduct of the Defendants directly violates N.C.G.S. § 75-1.1 in that its acts were unfair, unscrupulous, immoral, deceptive, oppressive, and substantially injurious to Plaintiffs and was an inequitable assertion of its power and position over Plaintiffs under the circumstances.

62.     The above-described conduct of the Defendants was not based upon honest disagreement or innocent mistake.

63.     The above-described conduct of Defendants was committed intentionally, willfully, and with malice toward Plaintiffs.

64.     Defendants' actions were accomplished by aggravating or outrageous conduct, including malice, oppression, and reckless or wanton disregard of Plaintiffs' rights.

65.     Defendants' unfair and deceptive trade acts or practices were in or affecting commerce.

66.     As a proximate result of Defendants' unfair claim settlement practices and unfair and deceptive trade acts and practices, Plaintiffs have suffered damages in an amount equal to the benefits currently due under the Policy as well as additional damages to be proven at trial.

67.     Pursuant to N.C.G.S. § 75-16, Plaintiffs are entitled to treble their damages.

68.     Pursuant to N.C.G.S. § 75-16.1, Plaintiffs are entitled to an award of reasonable attorney's fees.

69.     Plaintiffs' damages are not presently fully capable of admeasurement.

**WHEREFORE**, Plaintiffs pray that the Court enter Judgment as follows:

1.  That Plaintiffs have and recover of Defendants a sum equal to the amount equal to the benefits due under the Policy, as well as consequential, incidental, compensatory, and other damages to be proven at trial;

2.  That Plaintiffs be awarded treble its damages as provided by N.C.G.S. §§ 75-1.1 and 75-16, or at Plaintiffs' election, punitive damages;

3.  That the Court tax prejudgment interest on the award and post judgment interest on the entire judgment as permitted by law;

4.  That the Court tax the costs of this action, including Plaintiffs' attorneys' fees as provided by the common law and the North Carolina General Statutes, including but not limited to Chapter 75 and 58 thereof, against Defendants;

5.  That all issues of fact be tried by a jury; and

6.  Such other and further relief as the Court may deem just and proper.

This the 27th day of July, 2022.

**HOWARD, STALLINGS, FROM,**
**ATKINS, ANGELL & DAVIS, P.A.**

By: /s/Robert H. Jessup
Robert H. Jessup, Esq.
State Bar No. 42945
5410 Trinity Road, Suite 210
Raleigh, North Carolina 27607
Telephone: (919) 821-7700
rjessup@hsfh.com
*Attorney for Plaintiffs*

**STOCKHAM LAW GROUP, P.A.**

By: /s/Nicole C. Vinson
Nicole C. Vinson, Esq.
State Bar No. 44878
109 S. Edison Ave.
Tampa, FL 33606
Telephone: (813) 867-4455
nvinson@stockhamlawgroup.com
*Attorney for Plaintiffs*